IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCANNELL PROPERTIES #516, LLC, and
SCANNELL PROPERTIES #673, LLC,

        Plaintiffs,

v.                                             Case No.  24-2604-JWB

CITY OF EDWARDSVILLE,
CAROLYN CAIHARR,
CAMILA ADCOX,
MARGARET SHRIVER, and
MARK BISHOP,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motions to dismiss Plaintiffs' complaint. Carolyn Caiharr, Camila Adcox, Margaret Shriver, Mark Bishop, and Michael Moulin ("Individual Defendants") jointly filed their motion to dismiss.[1]  (Docs. 35, 42.)  The City of Edwardsville ("Edwardsville") separately filed a motion to dismiss.  (Doc. 42.)  The motions are fully briefed and ripe for decision.  (Docs. 34, 35, 42, 54, 55, 65, 66.)  The Individual Defendants' motion is GRANTED, and Edwardsville's motion is GRANTED IN PART AND DENIED IN PART.

## I.  Facts[2]

Plaintiffs are two Indiana limited liability companies: Scannell Properties #516, LLC and Scannell Properties #673, LLC.  Defendants are the City of Edwardsville, Carolyn Caiharr, Camila Adcox, Michael Moulin, Margaret Shriver, and Mark Bishop.  Caiharr is the Mayor of

---

[1] Defendant Michael Moulin filed a separate motion to dismiss.  (Doc. 42.)  However, he is represented by the same legal counsel and adopts by reference the arguments made by the other Individual Defendants in their motion to dismiss.  (Doc. 35.)

[2] The facts in this section are from Plaintiffs' first amended complaint.  (Doc. 31.)

Edwardsville and was a City Councilmember since 2018.[3]  The other Individual Defendants are members of the Edwardsville City Council.  Plaintiffs' claims concern a parcel of land that contains approximately 55 acres.  It is located entirely within Bonner Springs, Kansas, and it forms part of a commercial campus named Compass 70 Logistics Center Park.  It is south of Interstate 70 Highway ("I-70"), west of 110th Street, south of Riverview Avenue, and north of Speaker Road. The court will refer to the parcel of land as the "Property."   Although not explicitly stated by Plaintiffs, it seems that the Property is subdivided into office space and warehouses that can be either purchased or leased from Plaintiffs.

In 2018, Edwardsville submitted an application for state and/or federal funds to improve 110th Street.  According to Plaintiffs, the application stated that Edwardsville seeks to improve 110th Street in order to support the current and anticipated commercial, industrial, and residential developments in Edwardsville and Bonner Springs.  Plaintiffs claim that the application references the Property.  Edwardsville received three million dollars in federal funding to complete the construction project.[4]  Plaintiffs also allege that the City Manager of Edwardsville represented to the consulting firm Renaissance Infrastructure Consulting that it desired to improve 110th Street by widening and improving it to accommodate heavy truck traffic.  Renaissance Infrastructure Consulting allegedly drafted a memorandum that states the improvements would enable trucks to access the Property from 110th Street.

In 2021, Plaintiffs claim that Edwardsville and Bonner Springs signed an Interlocal Agreement, wherein (1) the cities agreed to support the development of the Property, and (2)

---

[3] Plaintiffs do not identify when Caiharr became Mayor.
[4] Plaintiffs also assert that for Edwardsville to receive the federal funding, it had to enter into an agreement with the Kansas Department of Transportation.  This alleged agreement requires written approval by the Kansas Secretary of Transportation if the right of way is disposed of or its use changes and federal funds were used in the acquisition of the right of way.

affirmed that the Property is zoned for industrial use. Plaintiffs claim that when Edwardsville signed the agreement, it contractually acknowledged its support for developing the Property.

However, Edwardsville adopted Ordinance 1076 (the "Ordinance") on September 23, 2024. The Ordinance banned heavy truck traffic on 110th Street heading south from I-70.[5] The weight restrictions do not apply to traffic on 110th Street north of Riverview Avenue. Plaintiff asserts that Edwardsville adopted the Ordinance after a city council member witnessed an entrance being constructed to 110th Street on the east side of the Property. The Individual Defendants Adcox, Moulin, Shriver, and Bishop allegedly voted to pass the Ordinance. Plaintiffs claim that prior to adopting the Ordinance, Edwardsville officials and its city council had not spoken about imposing a weight limit on 110th Street. In fact, Plaintiffs assert that the meetings to discuss the Ordinance took place behind closed doors away from the public.

Presumably when the city council announced and adopted the Ordinance at its September 23, 2024, meeting, a resident became concerned that it would affect local heavy truck traffic traveling within Edwardsville. In response, Mayor Caiharr purportedly responded by telling the concerned citizen/business owner that the Ordinance would not affect his use of heavy trucks on 110th Street. Plaintiffs assert that Edwardsville did not voice concern about public safety before or during the meeting when the Ordinance was adopted.

However, Plaintiffs' complaint indicates they were aware that some Edwardsville elected officials opposed further development of the Property. They assert that Caiharr attended a Bonner Springs City Planning Commission meeting on September 17, 2024, during which she vocally opposed Plaintiffs' development of the Property. Plaintiffs argue that Caiharr's opposition is personal. They allege that she contacted Bonner Springs City Councilmember McMahon to

---

[5] According to Plaintiffs, heavy trucks are those that weigh in excess of 12,000 pounds and are commonly referred to as tractor-trailers, semi-trucks, or eighteen-wheelers. They are typically 72 feet long and can weigh up to 80,000 lbs.

express her objections to the Property's development. And before Caiharr was elected mayor, she allegedly denounced the project as a city councilmember. Plaintiffs claim that Caiharr had a significant impact on the adoption of the Ordinance, and that her actions exceeded her authority as mayor.[6]

Plaintiffs also allege that the Ordinance unlawfully targets them and their use of the Property. They claim it inhibits them from using the property as currently zoned. Moreover, Plaintiffs allege that prior to the Ordinance, they had completed significant construction work on the Property. One of the construction projects was sanitary sewer improvements, which Plaintiffs paid for, but a large portion of which is now owned by Edwardsville. The sanitary sewer project alone cost one million dollars. Moreover, there are two additional industrial buildings currently under construction. In total, at the time of filing the first amended complaint, Plaintiffs have improved Riverview Avenue (i.e., a roadway that abuts the Property's north end)[7] at a total cost of about two million dollars. Plaintiffs claim that had they known Edwardsville would adopt the Ordinance, they would not have improved the property through construction and development because the Ordinance has and will continue to diminish the Property's value.

Notably, Edwardsville adopted a second ordinance, Ordinance 1079, that postpones enforcement of the Ordinance until January 1, 2027. Nevertheless, even with the mortarium, Plaintiffs must disclose the Ordinance to potential buyers or lessees, and they argue that it has already damaged their relationship with entities that have purchased warehouses or buildings on the Property.

---

[6] Plaintiffs do not further explain this allegation. Indeed, they only assert that Caiharr utilized her position as mayor to restrict and remove Plaintiffs' property rights. (Doc. 31 ¶ 116.)

[7] The court reviewed a map of the Property provided by Plaintiffs in their motion for a preliminary injunction. (Doc. 3-2.)

## II.    Procedural Background

Plaintiffs filed their first complaint on December 31, 2024.  (Doc. 1.)  That same day, they filed a motion seeking a temporary restraining order or preliminary injunction against the Ordinance.  (Doc. 3.)  The court held a status conference on January 8, 2025.  (D.E. 12.)  During the status conference, the court denied Plaintiffs' motion for a temporary restraining order, and ordered the parties to email chambers by January 17, 2025, to inform the court as to whether a hearing is needed for the preliminary injunction.  (*Id.*)  Defendant Edwardsville and Caiharr filed a motion to dismiss Plaintiffs' complaint on January 24, 2025.  (Docs. 13, 14.)  However, before Plaintiffs responded to the motions to dismiss, the parties filed a joint status report on February 10, 2025.  (Doc. 16.)  Therein, they informed the court that they had set the case for mediation on February 28, 2025, and they requested that the court stay all pretrial proceedings until after mediation.  (*Id.*)  The court did so.  (D.E. 18.)  The parties did not reach a mediated settlement, so the case moved forward.  (Docs. 21, 22.)  Plaintiffs then filed an amended complaint, (Doc. 31), and the court set the briefing deadlines for the preliminary injunction.  (D.E. 29.)  Currently, the preliminary injunction hearing is set for June 30–July 1. (D.E. 40.)

In the amended complaint, Plaintiffs bring nine claims.  Claim one is tortious interference with business expectancies against all Defendants.  Claim two is inverse condemnation against all Defendants.  Claim three is a declaratory judgment action wherein Plaintiffs seek a declaration by the court that the Ordinance is preempted by 49 U.S.C. § 31114 (i.e., the Surface Transportation Assistance Act) ("STAA").  Claims four through seven are 42 U.S.C. § 1983 claims against Edwardsville in its official capacity and against the Individual Defendants in their individual capacities asserting: (1) a violation of procedural due process, (2) a violation of the Equal Protection Clause, (3) a violation of separation of powers through ultra vires executive action, and

(4) a violation of the Dormant Commerce Clause. Claim eight is conspiracy against the Individual Defendants in their individual capacity. Lastly, claim nine is promissory estoppel against all Defendants.

Individual Defendants and Edwardsville have moved to dismiss all of Plaintiffs' claims. (Docs. 34, 35, 42.) The court first addresses the Individual Defendants' motion to dismiss. It will then assess Edwardsville's motion to dismiss.

## III.    Standard

A complaint must contain enough facts to state a claim for relief that is plausible on its face in order to withstand a Rule 12(b)(6) motion to dismiss. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). At the motion-to-dismiss stage, a reviewing judge accepts all well-pleaded allegations in the complaint as true. *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.,* 771 F.3d 697, 700 (10th Cir. 2014). The reviewing judge also views all well-pleaded facts and the reasonable inferences derived therefrom in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007). Rule 12(b)(6) "does not require that Plaintiff establish a prima facie case in [its] complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171–72 (10th Cir. 2015) (internal citations omitted). In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support his claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

IV.    **Analysis**

A.  **Ripeness**

Both Edwardsville and the Individual Defendants argue that Plaintiffs' claims are unripe because there is a moratorium suspending the enforcement of the Ordinance until January of 2027. (Doc. 34 at 3; Doc. 35 at 5; Doc. 42.)  As such, Defendants assert that there is no live controversy because the Ordinance may never go into effect.  (*See* Doc. 34 at 3.)

The ripeness doctrine is both a constitutional and prudential matter.  *See United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019).  It prevents "premature adjudication of abstract claims."  *Id.* (citation and quotation omitted).  Hence, for a federal court to hear a case, it must satisfy Article III's "'case or controversy' requirement."  *Id.* (citation omitted).  And a controversy is present only when it is "definite and concrete, touching the legal relations of parties having adverse legal interests."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937).  A court cannot issue an order that advises on what the law could be in a hypothetical situation.  *See id.*

Here, the court acknowledges that enforcement of the Ordinance is paused until January 2027.  Nevertheless, Plaintiffs have pleaded that the Ordinance is hampering their ability to sell or lease portions of the Property because they must disclose the Ordinance to potential buyers or lessees. (Doc. 31 ¶¶ 87, 88, 89, 90, 91.)  Plaintiffs also assert that the Ordinance has already caused damage to their relationship with owners who have previously purchased lots or warehouses on the Property.  (*Id.* ¶ 96.)  Lastly, they argue it has impacted their decision-making as to whether they should complete construction projects that they have already begun.  (*Id.* ¶ 73.)  Thus, the court concludes that there is a live case or controversy because the Ordinance is presently impacting Plaintiffs' development of the Property and its marketability.

Therefore, Plaintiffs' claims are ripe for adjudication.

**B. Individual Defendants**

The court will first consider Plaintiffs' federal claims and then address their state law claims against the Individual Defendants.

*1. Federal Claims Pursuant to 42 U.S.C. § 1983*

Regarding the § 1983 claims, the Individual Defendants argue that they are absolutely immune because the claims stem from legislative activities. (Doc. 35 at 2.)  Specifically, the Individual Defendants argue that Plaintiffs' § 1983 claims relate to their adoption of the Ordinance. (*Id.* at 1–2.)

However, Plaintiffs argue that the Individual Defendants cannot be immune because the Ordinance targets the Property. (Doc. 55 at 3.) According to Plaintiffs, when a city adopts an ordinance that specifically targets a tract of land, the enactment is quasi-judicial rather than legislative. (*Id.*)  They rely on *Keys Youth Servs., Inc. v. City of Olathe*, 38 F. Supp. 2d 914, 920 (D. Kan. 1999), for this position.

Plaintiffs' reliance on *Keys Youth Servs.* is misplaced.  There, the parcel of land at issue involved a home on a plot zoned for single family residences.  Keys planned to have troubled adolescent males with two or three adult staff members live in the home on the affected property. *Keys Youth Servs.*, 38 F. Supp. 2d at 916.  Because it would be classified as a "residential care facility," Keys needed to apply for a special use permit.  The local planning commission held a hearing on the matter and denied Keys' application. *Id.* at 917.  Olathe City Council also voted to deny Keys' application for a special use permit. *Id.* at 918.  In *Keys*, the court concluded that the city council was not protected by legislative immunity because their zoning decision affected a

single parcel of land, which essentially transformed the council's action into a quasi-judicial decision rather than an exercise of legislative power. *See id.* at 920.

Hence, Plaintiffs are correct that the court in *Keys* concluded the city council's decision was quasi-judicial in nature because it affected a single tract of land. However, they are incorrect that *Keys* established a broad rule that when any ordinance affects a single tract of land, it becomes a zoning decision that is quasi-judicial in nature. Rather, the city council's determination in *Keys* was always a zoning decision, and the court was clear that when a party is requesting a *zoning change* for one specific parcel or tract of land, then the city council's decision becomes a quasi-judicial act. *See id.* Thus, for a zoning decision to become quasi-judicial, it must begin and end as a zoning decision: "When, however, the focus shifts from the entire city to one specific tract of land for which a *zoning change* is urged, the function becomes more quasi-judicial than legislative." *Id.* at 920 (quoting *Golden v. City of Overland Park*, 224 Kan. 591, 597 (1978)) (emphasis added). However, the conduct as issue here is not a zoning rule, or a zoning change, or a zoning decision. Rather, it is enactment of an ordnance affecting weight limits on a city street. An ordinance is a law, and the making of a law is an exercise of the legislative power.

Plaintiffs argue that because the Individual Defendants allegedly adopted the Ordinance to target Plaintiffs, they were not performing a legislative function. (Doc. 55 at 3–4.) However, even if the court were to accept as true that Plaintiffs were targeted, they fail to cite any authority supporting their argument that the adoption of the Ordinance was anything other than the exercise of the legislative power. Furthermore, the Supreme Court has warned that courts should look to "the nature of the act, rather than on the motive or intent of the official performing it" when determining if an activity is legislative in nature. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Here, the act was clearly legislative in nature.

Thus, the court rejects Plaintiffs' argument that the adoption of the Ordinance was not legislative in nature. Additionally, according to the Tenth Circuit, "[l]egislative acts include, among other things, voting on legislation, resolutions, and ordinances." *Borde v. Bd. of Cnty. Comm'rs of Luna Cnty., N.M.*, 423 F. App'x 798, 801 (10th Cir. 2011). By enacting an ordinance in the normal course of their legislative roles, the Individuals Defendants' conduct was "quintessentially legislative." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Therefore, they are afforded absolute immunity against Plaintiffs' § 1983 claims.[8]

### 2. State Law Claims

The Individual Defendants also assert that the Kansas Tort Claims Act ("KTCA") affords them immunity from Plaintiffs' state law claims. Plaintiffs oppose the Individual Defendants' alleged KTCA immunity with the same arguments they proffered as to why Defendants are not immune from the § 1983 claims. Because the court has already addressed Plaintiffs' arguments at length, it will not do so again here.

The KTCA outlines exceptions from civil liability for public officials in their individual capacity. *See* K.S.A. § 75-6104. Section 75-6104(a)(1) states, "A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from: (1) Legislative functions, including, but not limited to, the adoption or failure to adopt any statute, regulation, ordinance or resolution." Based on the plain wording of the statute, when Defendants exercised the legislative power by adopting the Ordinance, their actions were

---

[8] Plaintiffs also raised two arguments as to why Edwardsville's adoption of the Ordinance should be viewed as administrative in character. Frankly, the court does not understand Plaintiffs' first argument, which appears related to whether notice was given; but the argument is written so poorly that the court struggles to comprehend it. The second argument is that Edwardsville allegedly adopted the Ordinance in a "closed-door, executive meeting." (Doc. 55 at 7.) Plaintiffs fail to cite any case law supporting this proposition. Moreover, Plaintiffs failed to put forth a well-reasoned theory as to why adopting the Ordinance in a closed-door meeting renders it an administrative function. This is a conclusory argument that, as articulated, has no apparent merit.

excluded from liability under the KTCA.  Because the court has concluded that the Individual Defendants have immunity against Plaintiffs' federal and state law claims, the only remaining Defendant is Edwardsville.

### C.  City of Edwardsville

In this section, the court analyzes Plaintiffs' claims against Edwardsville.  It addresses the state law claims first and the federal claims second.

#### 1.  State Law Claims

##### a.  Promissory Estoppel

The first claim analyzed is promissory estoppel.  Plaintiffs claim Edwardsville made promises and took actions that indicated it would support Plaintiffs' use of the property as one zoned for light industrial activity.  (Doc. 1 ¶¶ 205, 206.)  Plaintiffs also allege that Edwardsville promised and acted in a manner that indicated Plaintiffs would be able to access the property with heavy trucks.  (*Id.* ¶ 207.)  Plaintiffs allege that they relied on Edwardsville's promises and that Edwardsville reasonably expected them to do so.  (*Id.* ¶ 207.)

By contrast, Edwardsville asserts that promissory estoppel is unavailable when the alleged agreement is not in compliance with statutory requirements that govern municipal contracts.  (Doc. 34 at 12–13.)  In addition, Edwardsville argues that the estoppel claim should be dismissed because Plaintiffs fail to allege that an authorized official or governing body approved of the alleged agreements with Plaintiffs.  (*Id.* at 13.)

Edwardsville is correct that estoppel cannot be used to enforce a promise made by city officials when those officials acted "without authority under a city charter or its ordinance."  *B & E Invs., Inc. v. City of Wichita*, No. 94,243, 2006 WL 1816328, at *3, 136 P.3d 964 (Kan. Ct. App. 2006). If the matter is outside of the municipality's authority to act, any such promise is void and

estoppel shall not apply. *Benson v. City of De Soto*, 212 Kan. 415, 422–23, 510 P.2d 1281, 1288 (1973).

In the amended complaint, Plaintiffs allege that Edwardsville represented to them and other businesses that it supported the industrial development of the Property. Plaintiffs also allege that Edwardsville took multiple actions to support the development of the Property since 2018. Moreover, Plaintiffs argue that Edwardsville acknowledged its support for the development of the Property by signing the Interlocal Agreement with Bonner Springs. At this stage in the proceeding, the alleged facts indicate Edwardsville representatives promised Plaintiffs that the city would support the development of the Property. It is disputed whether those representations were unlawful or outside of the representative's authority to act. Therefore, the court denies Edwardsville's motion to dismiss Plaintiff's estoppel claim, concluding that at this stage in the proceeding, it is best to allow the parties to conduct discovery.

### b. Tortious Interference

Plaintiffs also allege that Edwardsville unlawfully interfered with its business expectancies by adopting the Ordinance. Plaintiffs argue that Edwardsville narrowly tailored the Ordinance to target Plaintiffs. (Doc. 54 at 8.) Plaintiffs further claim the Ordinance unfairly targets them because Caiharr informed a businessman that his commercial vehicles would not be affected by the Ordinance. (Doc. 1 ¶¶ 51, 52.)

In moving to dismiss, Edwardsville argues that it cannot be liable for tortious interference with Plaintiffs' business expectancies because it is immune from liability under the KTCA. (Doc. 34 at 5–6.) Edwardsville is correct that the KTCA exempts municipalities from liability for claims based on the exercise or failure to exercise discretionary functions or duties.[9]  *See* K.S.A. § 75-

---

[9] Edwardsville raises for the first time in its reply brief that it would also be immune from Plaintiffs' claim because the adoption of the ordinance constituted a legislative function. (Doc. 65 at 2) (citing K.S.A. § 75-6104(a)(1)).

6104(a)(5).  Plaintiffs argue that discretionary function immunity does not apply to Edwardsville's adoption of the Ordinance because the narrow tailoring of the Ordinance renders it "patently unreasonable."  (Doc. 54 at 8.)  Plaintiff relies on *Est. of Randolph v. City of Wichita*, 57 Kan. App. 2d 686, 698, 459 P.3d 802, 814 (2020), wherein the Kansas Court of Appeals provided a clear rule statement for discretionary immunity: "protected discretion lies in *the choice* among other reasonable options." *Id.* at 815 (emphasis in original).  In other words, the government or its agent "cannot be successfully sued for selecting one reasonable course of action over other reasonable choices." *See id.* Notably, the court identified as being patently unreasonable choosing among unlawful options or options that violate legal duties. *See id.*

Here, Plaintiffs implicitly acknowledge that Edwardsville made a choice between at least two options: (1) no weight restrictions on 110th Street, and (2) imposing weight restrictions on 110th Street.  Plaintiffs argue that Edwardsville's discretionary act by selecting the second option was unreasonable because it was narrowly tailored to target Plaintiff.  Plaintiff cites no case law indicating that such a choice is unreasonable.  But as discussed in the preceding section, Plaintiffs sufficiently pleaded a promissory estoppel claim related to Edwardsville's legal duties to honor its promises.  Since it is thereby possible that Edwardsville's choice might have violated a legal duty owed to Plaintiffs, Edwardsville's motion to dismiss Plaintiffs' tortious interference claim is denied.

### c.  Inverse Condemnation

Plaintiffs also bring an inverse condemnation claim against Edwardsville.  They argue Edwardsville's exercise of its police powers when it adopted the Ordinance was unreasonable. (Doc. 54 at 9.)  In response, Edwardsville argues that adopting the Ordinance was a valid exercise

---

Because Edwardsville raised this argument for the first time in its reply brief, and Plaintiff does not have an opportunity to respond to its legislative function immunity argument, the court will not consider it.

of Edwardsville's police powers because the Ordinance does not "deny all reasonable access to the property." (Doc. 34 at 7) (citing *Ray v. State Highway Comm'n*, 196 Kan. 13, 18, 410 P.2d 278, 283 (1966)).

No party properly addresses this claim. Plaintiffs failed to frame their inverse condemnation claim as an economic regulatory taking. *See Garrett v. City of Topeka*, 259 Kan. 896, 910, 916 P.2d 21, 32 (1996) (discussing an economic regulatory taking and the test that applies to such claim). Similarly, Edwardsville failed to appreciate the nuances of these claims and instead, set forth an overly simplified statement of law.

Under Kansas law, there are "[t]hree types of regulatory takings by use of police power have been recognized: physical, title, and economic." *Garrett v. City of Topeka*, 259 Kan. 896, 907, 916 P.2d 21, 30 (1996). A physical taking occurs when a regulation results in a "physical intrusion, occupation, interference, or displacement onto or into a property owner's space." *Id.* "A title regulatory taking is a restriction on use which significantly interferes with the incidents of ownership." *Id.* And "an economic regulatory taking is a taking only if the economic impact on the landowner outweighs the public purpose of the regulation." *Id.* at 31.

The court notes that public authorities may restrict and regulate the use of streets in Kansas to promote safety and public health. *See id.* However, a property owner of land that abuts a street also has "a private right to use [their] property and to access the street or highway, distinct from that of the public." *Id.* Thus, any restrictions and/or regulations that affect the private individual's right of access must be reasonable. *See id.* For if they are not and "unduly limit or unreasonably interfere with the rights of the abutting property owners," then a taking may have occurred, and the owner is entitled to just compensation for the burden imposed on the use of his land. *See id.* The analytical framework for determining whether a city's restraint is unfair and goes too far is if

the "economic impact on the landowner outweighs the public purpose of the regulation." *Id.* at 32. This is a multi-factor inquiry conducted on a "case-by-case" basis. *See id.*

At this stage in the proceeding, although no party thoroughly addressed this claim, the court finds that Plaintiffs have put forth facts sufficient to state an inverse condemnation claim predicated on an economic regulatory taking. Plaintiffs and Edwardsville agree that the Ordinance was adopted pursuant to Edwardsville's police powers. The issue, however, is whether the use of Edwardsville's police powers was reasonable. Edwardsville does not engage with that argument in its briefing. And Plaintiff proffers multiple reasons for why the Ordinance is unfair and unreasonably impacts their bottom line. Thus, given that this inverse condemnation claim involves a fact-intensive inquiry, the court finds it premature to dismiss Plaintiffs claim at this point in the proceeding. Edwardsville's motion to dismiss the inverse condemnation claim is denied.

### 2. Federal Law Claims

Plaintiffs have also asserted multiple federal law claims. The court first assesses their claim that the Ordinance is preempted by federal law. Afterward, the court addresses the § 1983 claims lodged against Edwardsville.

### a. Private Right of Action under STAA

Plaintiffs seek a declaratory judgment from this court that the Ordinance is preempted by the STAA. (Doc. 31 ¶ 136.) STAA's mandate prohibits state laws from denying commercial motor vehicles reasonable access between the interstate, defense highways, or other qualifying federal aid primary system highways and "terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, motor carriers of passengers, any towaway trailer transporter combination . . . or any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet." 49 U.S.C. § 31114(a)(1)–(2). Plaintiffs

assert that the Ordinance is preempted by STAA because it prohibits commercial vehicles from accessing terminals and facilities for unloading goods.  (*See* Doc. 31 ¶ 135.)  Plaintiffs also assert that the Ordinance is in violation of the regulations that implement STAA.  (*Id.* ¶ 137, 138.)

Edwardsville does not engage with the substance of Plaintiffs' preemption arguments. Instead, Edwardsville argues that Plaintiffs' claim is faulty at the outset in that they cannot bring a declaratory judgment action under STAA because Congress did not include a private right of action in STAA's statutory scheme.  (Doc. 34 at 8.)  According to Edwardsville, STAA neither contains an express or implied right of action for private enforcement.  (Doc. 34 at 8.)  Instead, Congress created a "regulatory scheme" that is to be implemented through the federal Department of Transportation and state agencies.  (*See id.*)

In response, Plaintiffs argue that it is unnecessary for Congress to expressly permit the private enforcement of STAA because they are bringing the declaratory judgment action under the Supremacy Clause.  (Doc. 54 at 11.)  Plaintiffs also assert that some courts have found STAA includes a private right of action.  (*Id.*) (citing *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1034 (7th Cir. 2008)).

To properly frame Plaintiffs' claim, the court first establishes the type of remedy Plaintiffs seek.  By requesting a declaratory judgment from this court, they are pursuing a form of equitable relief.  *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1420 n.8 (10th Cir. 1990) (identifying declaratory judgments as a form of equitable relief).

Moving to the parties' arguments and the case law cited therein, the court concludes that neither the Supremacy Clause nor STAA authorizes a private right of action.  The court will initially address Plaintiffs' argument that other courts have concluded STAA contains a private right of action.  Plaintiffs rely on *Aux Sable Liquid Prods. v. Murphy.*  However, the Seventh

Circuit in that case did not address the issue of whether STAA contains a private right of action. Indeed, there is no meaningful discussion or analysis as to how Aux Sable brought its preemption case. There is a lone statement that suggests Aux Sable brought its preemption case "pursuant to the Supremacy Clause." *Aux Sable Liquid Prods.*, 526 F.3d at 1032. But as discussed below, the Supreme Court case cited in the case Edwardsville relies on negates Plaintiffs' argument that they can bring a declaratory judgment claim under the Supremacy Clause—and the Supreme Court case was decided seven years after *Aux Sable Liquid Prods. v. Murphy*. Additionally, Edwardsville directs this court to conclusive authority that Plaintiffs cannot bring their claim pursuant to STAA or seek equitable relief when Congress intentionally foreclosed equitable relief.

In support of the argument that Plaintiffs cannot proceed under the Supremacy Clause, Edwardsville cites *Corey v. Rockdale Cnty.*, 689 F. Supp. 3d 1251 (N.D. Ga. 2023), *aff'd in part, vacated in part*, No. 23-13097, 2025 WL 1325325 (11th Cir. May 7, 2025). The court in *Corey* references the Supreme Court case of *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), in which the Court clarified that the Supremacy Clause does not inherently convey a private right of action as to all preemption matters because the Constitution grants Congress broad authority to determine how the laws it enacts are to be executed. *See id.* According to the Court, if the Supremacy Clause conveys a private right of action, it would "curtail [Congress's] ability to guide the implementation of federal law." *Id.* at 326. Indeed, as the Court noted, "[i]t would be strange" if the clause that "makes federal law supreme" also "limits Congress's power to enforce that law, by imposing mandatory private enforcement." *Id.* Thus, Plaintiffs cannot rely on the Supremacy Clause to bring their declaratory judgment claim.

Nor can Plaintiffs rely on STAA. As an initial matter, a party may not pursue a private right of action just because a federal statute was violated and the party was harmed by that

violation. *See Touch Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Instead, whether a party may privately enforce a federal statute depends on Congress's express or implied intent to establish a private right of action. *See Davis-Warren Auctioneers, J.V. v. F.D.I.C.*, 215 F.3d 1159, 1162 (10th Cir. 2000). A court determines if Congress created a private right action by (1) looking for rights-creating language in the statute, (2) "identifying 'the class for whose *especial* benefit the statute was enacted,'" and (3) considering "the relation between the specific provision at issue and the related statutory scheme."[10] *See Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1267 (10th Cir. 2004) (citation omitted) (emphasis in original). STAA does not contain rights-creating language. Instead, it is a broad mandate that prohibits states from adopting laws and ordinances that deny commercial vehicles reasonable access to drop-off points like food, fuel, and repair facilities when they are driving on the federal roadways identified in STAA. *See* 49 U.S.C. § 31114. Moreover, when assessing the provision at issue within the overall scheme, it is apparent that Congress did not envision its enforcement via private actions. Indeed, Congress explicitly provided an enforcement procedure applicable when a state law allegedly violates STAA. *See* 49 U.S.C. § 31115. Under Congress's design, when a state or city ordinance violates STAA, the Secretary of Transportation shall request that the Attorney General "bring a civil action for appropriate injunctive relief to ensure compliance" with the act. *Id.* The court notes, however, that Plaintiffs likely benefit from STAA because they work within the commercial transportation industry. Nonetheless, the court concludes that STAA does not contain an implied private right of action because (a) there is no rights-creating language, and (b) Congress expressly provided a remedial mechanism to address potential violations of its broad mandate. Thus, Plaintiffs cannot rely on STAA to bring their declaratory judgment claim either.

---

[10] The court notes that Plaintiffs did not address whether STAA contains a private right of action through this analytical framework.

Additionally, Congress may foreclose a party from seeking equitable relief. When Congress "precludes private enforcement" of a statute, a party "cannot, by invoking [the court's] equitable powers, circumvent Congress's exclusion of private enforcement." *Armstrong*, 575 U.S. at 328. However, it is important to note that foreclosure of equitable relief is distinct from whether Congress created a private right of action to enforce a federal statute. Edwardsville failed to appreciate this distinction. It cited *Corey v. Rockdale Cnty.* to support its argument that STAA does not provide a private right of action. (Doc. 34 at 8.) Actually, the court in *Corey* concluded that (a) Congress precluded private enforcement of STAA, and (b) because of this preclusion, a party cannot privately enforce STAA through a suit in equity. *See id.* at 1262–64.

In *Corey*, the court relied on *Armstrong v. Exceptional Child Ctr., Inc.*, in which the Supreme Court established a test for determining when Congress intended to foreclose equitable relief. According to the Court, Congress may through "express and implied statutory limitations" constrain federal courts from issuing equitable relief. In *Armstrong*, § 30(A) of the Medicaid Act was at issue. The Court concluded that two aspects of § 30(A) established "Congress's 'intent to foreclose' equitable relief." *See id.* at 328. First, Congress expressly provided a "sole remedy" that addressed the appellant's claim. *See id.* Second, the provision at issue (§ 30(A)) is broad and gives the Secretary of Health and Human Services discretion as to its implementation. *See id.* The Court explained § 30(A) is a "judgment-laden standard," and asserted that it believed Congress intended for the Secretary alone to implement the statute to achieve enforcement uniformity. *See id.*

Applying the analytical framework from *Armstrong* to STAA, this court concludes that Congress barred private parties from enforcing STAA through private actions seeking equitable relief. Congress expressly excluded private enforcement because the act provides an exclusive

remedial procedure. *See* 49 U.S.C. § 31115. STAA is also broad. It prohibits states laws and ordinances that would deny reasonable access between the interstate system and drop-off points that include food, fuel, and repair facilities. Furthermore, the Secretary of Transportation has considerable discretion over STAA's enforcement, as the statute authorizes, but does not mandate, that the Secretary enjoin alleged violations. *See* 49 U.S.C. § 31115; *see Corey*, 689 F. Supp. 3d at 1263. Thus, the court finds that Congress desired uniform enforcement of STAA and purposefully precluded parties from privately enforcing it through equitable relief.

Therefore, Plaintiff cannot pursue a declaratory judgment action seeking a declaration from this court that STAA preempts the Ordinance because (a) the Supremacy Clause conveys no private right of action for its general enforcement, (b) Congress did not provide for a private right of action in STAA, and (c) Congress intentionally precluded private enforcement of STAA through equitable claims.

### b. 42 U.S.C. § 1983 Claims

#### 1. Procedural Due Process Claim

Plaintiffs' first § 1983 claim is a procedural due process claim. They assert that Edwardsville failed to conform to procedural requirements under Kansas law: notice and a hearing.[11] (Doc. 1 ¶ 158.) As already discussed, the adoption of the Ordinance was a legislative decision. (*See* Sections IV.B.1, IV.B.2.) Moreover, the Supreme Court has determined "that constitutional procedural due process does not govern the enactment of legislation." *See Onyx Props. LLC v. Bd. of Cnty. Commissioners of Elbert Cnty.*, 838 F.3d 1039, 1046 (10th Cir. 2016) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)). Therefore, Edwardsville's motion to dismiss Plaintiff's § 1983 procedural due process claim is granted.

---

[11] Plaintiffs do not cite to any Kansas statute or constitutional provision guaranteeing its right to notice and hearing for the adoption of traffic law ordinances.

2. *Equal Protection Claim*

Plaintiffs also assert that Edwardsville narrowly tailored the Ordinance to discriminate against them in violation of the Equal Protection Clause. (Doc. 31 ¶168.)  According to Plaintiffs, Caiharr's statements that Edwardsville residents will be allowed to operate heavy trucks on 110th Street after the Ordinance goes into effect is evidence that Plaintiffs are treated differently under the Ordinance than similarly situated parties. [12]  (*Id.* ¶ 169); *see ETP Rio Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1060 (D.N.M. 2021) (discussing that a plaintiff must assert they are being treated differently than similarly situated parties to properly claim a violation of the Equal Protection Clause).

The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.A. It is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  In determining what level of scrutiny applies to an equal protection claim, the court looks to the basis of the distinction between the classes of persons. *See generally United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). "If the challenged government action implicates a fundamental right, or classifies individuals using a suspect classification, such as race or national origin, a court will review that challenged action applying strict scrutiny." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008). In such a case, "the government has the burden of proving that [its] classifications are narrowly tailored measures that further compelling governmental interests." *Id.* (quoting *Johnson v. California*, 543 U.S. 499, 505, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005)).  "If, instead, the challenged government action classifies people

---

[12] Plaintiffs do not assert that the Ordinance implicates a fundamental right.

according to a quasi-suspect characteristic, such as gender or illegitimacy, then [the] court will apply intermediate [or heightened] scrutiny." *Id.* at 1109-10. In those cases, the test would be whether the government can demonstrate that its classification serves "important governmental objectives" and is "substantially related to achievement of those objectives."  But if the challenged government action does not implicate either a fundamental right or a protected class, the court will apply rational basis review. *Carney v. Okla. Dep't of Public Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017). Under the rational basis standard, Plaintiffs' claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (citing *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

Edwardsville argues that Plaintiffs are not members of a suspect or quasi-suspect class for Equal Protection Clause purposes.[13]  (Doc. 57 at 6.)  And because Plaintiffs are not members of a suspect or quasi-suspect class, the ordinance need only satisfy rational basis review.  (*Id.*)  "A law or policy complies with the Fourteenth Amendment's Due Process and Equal Protection Clauses under the rational basis test if there is a 'rational relationship between the [policy] and the government's stated purpose.'"  *Fowler v. Stitt*, 676 F. Supp. 3d 1094, 1125 (N.D. Okla. 2023), *aff'd in part, rev'd in part and remanded*, 104 F.4th 770 (10th Cir. 2024) (citation omitted). According to Edwardsville, the Ordinance satisfies rational basis review because its purpose is to protect local infrastructure and ensure public safety.  It does so by limiting nonlocal heavy commercial vehicles from driving on 110th Street.  (*Id.* at 7.)  Edwardsville argues that it is reasonable to limit trucks with no business in Edwardsville to other routes.  (*Id.*)

After reviewing Edwardsville's argument, the court finds the Ordinance does not violate the Equal Protection Clause.  The problem with Plaintiffs' Equal Protection Clause claim at first

---

[13] Edwardsville directs the court to its Equal Protection analysis within the preliminary injunction briefing.  (Doc. 65 at 4.)  Pursuant to Fed. R. Civ. P. 10(c), the court considers the preliminary injunction briefing by reference.

glance is that they do not identify which suspect class they belong to or articulate that they are trying to bring a class-of-one equal protection claim. In any event, the Ordinance satisfies rational basis review because there is a rational relationship between the Ordinance's purpose (i.e., to protect local infrastructure and public safety) and the restriction of non-local heavy commercial vehicles driving on 110th Street. Thus, Edwardsville's motion to dismiss Plaintiffs' §1983 Equal Protection Clause claim is granted.

### 3. Ultra Vires Executive Action

Plaintiffs also raise a § 1983 claim for a violation of the separation of powers. (Doc. 31 at 26.) According to Plaintiffs, when the Ordinance was adopted, it was an "end-run around legislative authority, in violation of the fundamental principle of separation of powers." (*Id.* at 27.) Frankly, this claim is nonsensical. A section 1983 claim allows an aggrieved party to bring an action when state officials acting under color of state law violate the aggrieved party's "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983. The separation of powers is an inherent feature of our Constitution that *protects* our rights, privileges, and immunities. There is no federal right to the separation of powers, particularly at the state or local government level. That is not to say that a plaintiff cannot rely on separation of powers principles at the state or local level, but those would seem to be state-law claims, not federal claims arising under section 1983. Thus, Edwardsville's motion to dismiss Plaintiffs' ultra vires claim is granted.

### 4. Dormant Commerce Clause

Lastly, Plaintiff argues that the Ordinance violates the so-called Dormant Commerce Clause. The basis for Plaintiff's claim seems to be that the Ordinance permits heavy trucks to drive on 110th Street when they are traveling to or from a business within Edwardsville, whereas

heavy trucks cannot use 110th Street when they exit I-70 and travel back and forth between it and the Property. (Doc. 31 ¶¶ 64, 68, 191, 192.) Plaintiffs complain that the Ordinance is "unlawfully discriminatory" because it distinguishes between drivers working within Edwardsville and those that are not. (*Id.* ¶ 192.) In response, Edwardsville argues that the Ordinance has no effect on interstate commerce. (Doc. 57 at 3.)[14] Alternatively, even if it were to affect interstate commerce, Edwardsville argues that the local benefits outweigh any burden such that the Ordinance is not invalid under the Commerce Clause. (*Id.* at 5.)

The court finds that Plaintiffs have failed to proffer any facts suggesting that the Ordinance burdens interstate commerce. There are three ways in which a state statute may be said to violate the Commerce Clause under this line of jurisprudence:

> First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. Second, if the statute does not discriminate against interstate commerce, it will nevertheless be invalidated under the *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L.Ed.2d 174 (1970), balancing test if it imposes a burden on interstate commerce incommensurate with the local benefits secured. Third, a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question.

*Rocky Mountain Ass'n of Recruiters v. Moss*, 541 F. Supp. 3d 1247, 1254 (D. Colo. 2021) (quoting *KT.& G Corp v. Att'y Gen. of State of Okla.*, 535 F.3d 1114, 1143 (10th Cir. 2008). Plaintiffs have not alleged that the Ordinance clearly discriminates against interstate commerce. Plaintiffs have also failed to allege that it will burden interstate commerce. Moreover, nowhere do they suggest that the Ordinance's practical effect is extraterritorial control of commerce outside of Kansas.

---

[14] Like Edwardsville's Equal Protection Clause analysis, it directs the court to its preliminary injunction briefing for Plaintiffs' Dormant Commerce Clause claim. (Doc. 65 at 5.) Again, pursuant to Fed. R. Civ. P. 10(c), the court considers the preliminary injunction briefing by reference.

Hence, their allegations are insufficient to state a Commerce Clause claim in this manner, and Edwardsville's motion to dismiss it is granted.

**V.    Conclusion**

THEREFORE, Carolyn Caiharr, Camila Adcox, Margaret Shriver, Mark Bishop, and Michael Moulin's motions to dismiss are GRANTED.  All of Plaintiffs' federal and state law claims against the Individual Defendants are DISMISSED.  Edwardsville's motion to dismiss is GRANTED IN PART AND DENIED IN PART. The three remaining claims against Edwardsville are the state law claims.

The court notes that this case is set for hearing on Plaintiffs' motion for preliminary injunctions early next week.  (Docs. 3, 40.)  Review of Plaintiffs' brief on that motion shows that Plaintiffs' rely on the STAA claim as the basis for the preliminary injunction.  Additionally, review of Plaintiffs' motion to supplement their motion for preliminary injunction is based on their equal protection claim and dormant commerce clause claim.  (Doc. 44.) Those claims having been dismissed, Plaintiffs' motion for preliminary injunction (Doc. 3), is DENIED AS MOOT, their motion to supplement the preliminary injunction motion is DENIED AS MOOT, and the associated hearing is CANCELLED. Lastly, Plaintiffs filed a motion for leave to file a sur-reply to the Individual Defendants' motion to dismiss.  (Doc. 69.)  However, Plaintiffs did not attach the sur-reply to their motion for leave in violation of D. Kan. R. 15.1(a)(2).  Hence, Plaintiffs' motion is DENIED.  The court notes that even if Plaintiffs were to have attached their sur-reply, it would likely not have made a difference because the claims against the Individual Defendants were dismissed on immunity grounds.

IT IS SO ORDERED.  Dated this 26th day of June, 2025.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE